ARTHUR L. CONATY, *Receiver, vs.* GUARANTY LOAN COMPANY.

JUNE 6, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This is a petition in equity whereby the Citizens Savings Bank as mortgagee, having paid certain taxes on the mortgaged real estate, now seeks subrogation to the preference of the city of Providence for these taxes against the general fund in the hands of the receivers of the respondent company.  General laws 1923, chapter 64, sec. 3. The petition by its terms is based entirely upon such recovery as the bank would obtain in an independent law action

against the receivers of the respondent company of payments made by it for taxes assessed against the mortgaged real estate, notwithstanding these payments were made by the bank before it had foreclosed the mortgage and bought in the mortgaged property for more than enough to satisfy these taxes, or any lien therefor.

In the superior court the cause was tried, together with the action at law (see *Citizens Savings Bank* v. *Guaranty Loan Company*, 62 R. I. 448, opinion filed June 6, 1939) and the trial justice granted full relief to the petitioner bank. A decree was entered accordingly, establishing the bank's claim for payments of taxes and interest to the amount of $5375.96 and also granting to it subrogation therefor to the city's statutory right of priority over other creditors against the receivership fund. The cause is before us on the appeal from this decree taken by the receivers of the respondent company. The facts, other than those discussed *infra*, are stated in *Citizens Savings Bank* v. *Guaranty Loan Company, supra*. The proceedings here came up within the above-entitled case but actually concern the petitioner bank and the finally appointed receivers of respondent Guaranty Loan Company.

The appellants, hereinafter referred to as the receivers, have made numerous contentions under their reasons of appeal which are mainly and substantially stated as follows: First, the petition was based entirely upon such recovery as the bank might obtain in its action at law, founded upon the disallowed claim; second, the petition was not filed within the time limit set by the decree of the superior court in the receivership proceedings and the suit is therefore barred; third, the city's lien for taxes was discharged when the bank paid them; fourth, the bank was under no legal compulsion to pay the taxes and is a volunteer; fifth, no right of subrogation exists in any event because the city of Providence filed no claim with the receiver for such taxes; sixth, the petitioner made its election of remedies when it prosecuted

the action at law to establish its claim as filed, and its petition here is barred; seventh, the trial court erred in denying the receivers' motion to compel the bank to elect between the law action and this petition as its remedy; eighth, the case of *Willits* v. *Jencks Mfg. Co.,* 54 R. I. 164, is not applicable or controlling in the circumstances of the instant case. It is urged that any of these contentions, if upheld, is determinative of the receivers' right to have their appeal sustained.

On the other hand, the bank urges substantially: First, if the petition is held to depend entirely upon the bank's recovery in the action at law, the decision for the defendant in that action was erroneous and should be reversed; second, the petition for subrogation was properly filed within the receivership proceedings because the superior court had control over its decrees for a period of six months and could extend the period for commencement of suit to establish its claim; third, the receivers had notice of the bank's payments of taxes which were sufficiently included in the claim as filed to support this petition; fourth, the petition for subrogation could be filed and granted at any time before distribution; and fifth, in any event, the instant cause is governed by the law enunciated in *Willits* v. *Jencks Mfg. Co., supra.*

The cause and the contentions of the parties present numerous questions of law which are not without considerable difficulty and each party has cited cases which seem to support, to a large extent, the respective contentions. We have examined these and other authorities and have come to the conclusion that the instant cause must be decided upon its particular circumstances, evidence, pleadings and record. Upon such a consideration, we are of the opinion that the trial justice was clearly not justified in granting *complete* relief by permitting the petitioner to *establish* its basic claim *under this petition,* when the bank previously had brought a law action for that purpose, and where this

petition, as filed, depended *entirely* on the expected recovery by the bank of its claims in that action.

In our opinion the petition for subrogation here depended entirely upon the bank's success in establishing its basic claim in the companion law action previously commenced; and that action resulted in a decision for the defendant which we have just affirmed. *Citizens Savings Bank* v. *Guaranty Loan Company,* 62 R. I. 448. A careful reading of the petition here shows clearly that the bank was seeking thereby merely to be subrogated to the preference granted by statute to the city in relation to taxes, but only to the extent that the bank would have successfully established its claim therefor in the pending law action. The following quotation from the petition and prayers thereof make this fact clear beyond question:

"EIGHTH: That a judgment in favor of your petitioner in said action at law *will not establish your petitioner's aforesaid right of subrogation* as to such part of said judgment as shall represent reimbursement of taxes and interest on the same; that your petitioner cannot establish such right by the strict rules of common law and hence will be remediless in the premises without the aid of this Court of Equity.

WHEREFORE your petitioner prays,

1. That this Honorable Court may decree that *upon your petitioner recovering a judgment in its said action at law, your petitioner shall be subrogated* to the right of the City of Providence to be paid the amount of said taxes and accrued interest thereon to the time of such payment as part of the expenses of administration of the estate of the respondent corporation and in priority to all other claims except the claims, if any, of the United States of America and State of Rhode Island taxes.

2. That the aforesaid order of this Court entered March 16, 1936 shall not be construed to bar the filing and prosecution of this petition, the petitioner *having duly commenced its action at law* upon its claim against the respondent corporation before March 31, 1936." (italics ours)

The evidence of the bank's conduct from the beginning, the claim as filed, and the law action as duly commenced to establish that claim, confirm our opinion on the nature of this petition. Since the trial justice, upon the record, pleadings and evidence in the law action, decided in favor of the defendant and awarded no recovery whatever to the bank as plaintiff, and since we have affirmed that decision, it follows that this petition must also fail, because it is based entirely on the bank's expected recovery in the law action. Therefore, the first contention of the receiver is sound under all the circumstances here and, in our opinion, is determinative of the cause in favor of the respondents.

If we assume, as the bank contends, that the petition could be considered differently, that is, as one to establish the bank's claim independently of the law action, as well as to be given the city's right of priority, in relation to taxes, over other creditors against the receivership fund, the situation would not be without further grave difficulties to the bank's contentions. First, chap. 64, sec. 3, upon which the city's right to such a preference depends and upon which the bank, if it could completely acquire that right, would also have to rely, is not self enforcing.

In our opinion, before priority under that statute would be granted, even to the city, it must have filed and have established a just claim against the receivership fund. In other words, if the city had failed entirely to file its claim for taxes in a receivership proceeding, wherein the receivership fund was the sole asset and was not produced by the sale of the taxed realty, we see no reason why such receivership could not be concluded without any regard for the city's statutory right to a preference for taxes. In this respect it is noted that the statute differs vitally from the general taxing authority of the city under G. L. 1923, chap. 62, sec. 2, which specifically gives a *lien* to the city against the taxed realty, which *lien* runs with the realty.

In the instant case, however, the city filed no claim in the

receivership for any taxes; nor did the bank as its alleged successor in right file any *specific* claim solely for these taxes, such as the city would have had to file to be adequately protected. We have pointed out in our opinion in the companion law action that the claim which the bank filed and sued on was intended and treated by it as *an entirety,* based upon the whole mortgage deficiency after foreclosure; and that the deficiency claim included the taxes, and interest thereon, which in the existing circumstances were inseparable from the mortgage. Therefore, there was no claim filed by the city to support its right to enforce a preference over other creditors under chap. 64; and moreover there was no specific claim solely for taxes filed by the bank as alleged successor to the city's right.

Secondly, if this petition be considered as an original independent suit to establish the bank's claim, as the trial justice evidently held, it was not commenced until September 14, 1936. This was nearly six months *after* March 31, 1936, the time limit within which the bank was specifically required to commence its suit to establish the disallowed claim or be "thereafter and forever barred from bringing suit", according to the decree entered on March 16, 1936.

But the bank argues that the court has control over its decrees for a period of six months and therefore it could modify that decree. We concede this general contention; but it does not assist the bank's position here, for the reason that the bank never sought, by motion or otherwise, to have modified that decree which specifically named the bank and fixed March 31, 1936 as the end of the period within which it must bring its suit to establish the disallowed claim or be "thereafter and forever barred from bringing suit." Nor did the court ever enter any decree modifying the terms of the former decree so as to extend the time limit in question to include September 14, 1936. Therefore, the decree as entered was unmodified and was binding upon the parties, and this would have barred the suit.

All that the bank sought and obtained was an order that "the right of the petitioner to file and prosecute its petition shall be considered and determined as of September 14, 1936, the date upon which the said petition was filed." In such circumstances, we think that the petition, although actually heard some months later, was properly considered as of September 14th; but it was too late then, according to the decree above mentioned, for the bank to commence its suit to establish the basic claim as filed and as disallowed in the receivership.

The bank relies for its main contention, if we understand its argument, upon the law enunciated in *Willits* v. *Jencks Mfg. Co., supra,* as controlling and commanding in any event an affirmance of the final decree in the instant cause. If the difficulties above mentioned be all resolved in favor of the bank's contentions, which we do not hold, we are of the opinion that a reversal of the decree entered in this cause would not be inconsistent with the law stated in the *Willits* case, *supra.*

The case contains entirely different facts and pleadings from those presented here and therefore it is properly distinguishable from the instant case. Moreover, the rule of law stated and finally applied by the court to reach its conclusion in that case may well be adopted and applied here; and if so applied, it would lead in equity and justice to a decision for respondents.

In the *Willits* case the respondent company in receivership was the mortgagor and was directly and expressly obligated to the mortgagee upon the mortgage and note; whereas these respondents on the evidence are not the mortgagors and are not obligated to the mortgagee under the mortgage note or any other agreement, express or implied. Again, in that case, *the city duly filed in the receivership its claim for taxes,* and the petition of the mortgagee for subrogation for payment of the taxes was brought *within the time limited for commencement of suits to establish disallowed claims;*

whereas here the city filed no claim for taxes and the suit was not commenced by the bank within the time limit set by the decree for that purpose. The *Willits* case does not hold that a mortgagee, who pays taxes *merely* to protect its own mortgage security, and later forecloses the mortgage and buys in the property for an amount exceeding the taxes due, must succeed fully under any and all circumstances to the city's lien or right of preference for such taxes against the receivership fund of a stranger to the mortgage. Nor does the case of *Equitable Trust Co.* v. *Kelsey,* 209 Mass. 416, upon which the *Willits* case strongly relies, go that far.

On the contrary the court in the *Willits* case specifically and significantly held: "We feel constrained to follow the well-reasoned decisions sustaining the principle of subrogation when *no circumstances appear to render the same oppressive or inequitable.*" (italics ours) It then proceeded to apply that rule and found that the receivership estate there *was not prejudiced* by such payment, and that subrogation therefore would do complete justice *in that case.*

If, therefore, the doctrine of subrogation is to be applied here—or in the companion law action under the common counts—it must be based upon principles of equity and good conscience. Adopting and applying the rule precisely as stated in the *Willits* case, we are led to the conclusion that complete subrogation of the bank to the city's right of priority against this receivership fund may well wipe out most of the fund and work great hardship and injustice to the depositor creditors of the insolvent company, which was *not* obligated to the mortgagee as in the *Willits* case. Equity and justice therefore would seem to be better served in the instant case by a reversal of the decree.

Certain arguments and citations in the bank's brief suggest a further reason that seems to us to bear upon the *equities* of the parties in the instant cause. If the bank could have acquired the right to *complete* subrogation to the lien and preferences of the city in relation to the taxes it had

paid, it would then have a *lien* for these taxes *prior even* to its lien as mortgagee. Upon the foreclosure sale, *equity* would seem to require that the liens be satisfied in the order of their priority and here, there were proceeds enough from the sale to satisfy the city's tax lien. Or, if the payment created a new equitable lien of a similar character to the city's lien, the bank would still have *two* funds available for its satisfaction; first, the proceeds of the foreclosure sale, which were ample to reimburse the bank for all taxes and interest; and secondly, the receivership fund, which was not created by or benefited from any of the proceeds of the foreclosure sale.

On the other hand, the depositor creditors of the insolvent respondent company were bound to look *only* to the receivership fund for satisfaction of their claims. Under these circumstances it would appear to us as more equitable and just to insist that the bank exhaust its security, if possible, against the proceeds of the foreclosure sale, before it should be given priority over other creditors against the receivership fund of a stranger to the mortgage. These are some of the difficulties which would confront the bank if we assumed that the petition in the instant case had been intended and brought by the bank *as an original one to establish the bank's claim.* However, as we have previously stated, the petition was actually based solely upon the expected successful outcome of the action at law and, having failed to recover therein, the petition must fail.

We are of the opinion that the trial justice was clearly wrong in permitting the bank to establish upon this petition, independently of the law action, its full claim for taxes and interest and granting to it complete subrogation, rather than limiting the bank to the allegations and prayers of its petition for priority, if and when the bank had established that claim in the pending law action for that purpose.

For the reasons stated, the receivers' appeal, therefore, is sustained, the decree heretofore entered is reversed, and

the cause is remanded to the superior court for further proceedings.

BAKER, J. I concur, on the following ground, in the result reached by the majority of the court. The present petition seeks to establish, in equity, the priority of the mortgagee's claim for taxes. This court in the *Willits* case, *supra,* recognized the propriety of the application of the principle of subrogation in such instance when "no circumstances appear to render the same oppressive or inequitable." However, in my opinion, the facts and circumstances appearing herein do render the application of that principle in this proceeding inequitable. This point is discussed in the latter portion of the majority opinion.

In addition to the matters therein referred to on this issue, it may be noted that the mortgagee made no attempt to foreclose its mortgage until 1935, although such mortgage had been in default since 1930. Even though it was a fact that the corporation which owned the property went into receivership in 1931, and the mortgagee was then, by an injunction in general terms, prevented from foreclosing its mortgage, undoubtedly on its motion such injunction would, after a reasonable interval, have been vacated by the court, as eventually happened. See *In re S. H. Greene & Sons Corp.,* 131 A. 547 (R. I.). The evidence herein, however, clearly shows that the mortgagee, while it did not specifically surrender any right, nevertheless apparently was willing to delay action in connection with its mortgage in the hope that business conditions and the real estate market would improve.

In the meantime, the mortgagee, which was kept informed of conditions surrounding the property involved, for several years paid the taxes in question, which were in excess of $1000 each year, without taking any positive action looking toward reimbursement. Under such circumstances, when the foreclosure finally took place after the expiration of sev-

eral years, the total sum of such taxes with interest exceeded the entire amount of the assets of the insolvent corporation in the hands of its receiver. In view of the manner in which this situation was brought about, and because of the other reasons advanced on this point in the majority opinion; in my judgment the granting of the mortgagee's petition for priority as to its tax claim is inequitable.

Having concurred in the dissent filed in the law case, heard herewith, I am of the opinion that the mortgagee has established its claim for taxes against the insolvent corporation in question. However, such mortgagee, in my opinion, should be treated as a general creditor only of such corporation, and, under the circumstances appearing herein, is not entitled to any priority as far as such claim is concerned.

Moss, J., dissenting. I am unable to agree with much of the reasoning or with the conclusion in the opinion of the court in this proceeding. I concur, however, with the statement therein to the effect that the petition of the Citizens Savings Bank is based on its right to recover in an independent action at law, against the Guaranty Loan Company and its receivers, for taxes assessed against the company but paid by the bank. That action was tried at the same time and before the same justice of the superior court as this proceeding and resulted in a decision for the defendants, in arriving at which the trial justice stated in his rescript that he would not consider in that case the items of taxes and interest thereon but was disposing of them in this proceeding in equity.

Herein he disposed of those items by finding that the bank was entitled to have the claim, which it had filed in the receivership suit, approved and enforced, so far as based on the taxes paid and interest thereon; and by finding that its claim, as so limited, was entitled to a preference in payment over the ordinary claims against the corporation. These findings he based on the doctrine of subrogation.

In the opinion of the court in the instant proceeding the decision for the respondents is based mainly on the reasoning that a decree was entered in the receivership suit limiting the time within which the bank could bring a suit to establish its claim, previously disallowed by the receivers; that the bank had brought the action at law in accordance with that decree; that the bank's petition, which is the foundation of the instant proceeding, was based entirely upon such recovery as the bank might obtain in its action at law; that the bank failed to obtain any recovery in that action; and that therefore its petition should be denied.

I am inclined to agree with this reasoning, except that to my mind one necessary link in the chain is entirely missing, because, as stated in my dissenting opinion in the law case, I am convinced that the exception of the plaintiff bank to the decision of the trial justice in that case should have been sustained by this court and that the case should now be remitted to the superior court with a direction to enter a judgment for the plaintiff for the amount that it had paid for the taxes and interest on that amount.

Therefore, because of that conviction, I am also convinced that the final decision and decree of the trial justice in the instant proceeding should be affirmed, unless that decree should be reversed on some other ground not based on the decision in the law action in favor of the defendants. In discussing the other grounds of reversal relied on in the opinion of the court in the instant proceeding, I shall do so, as I think I properly may under the circumstances, on the assumption that the bank established in the law case its claim against the insolvent company and its receivers for the taxes paid by it and interest thereon; and that the only question in the instant proceeding is whether the bank is entitled to a preference in payment, over the general creditors of the insolvent company.

Most of the other grounds relied on in the opinion of the court have been already discussed in the dissenting opinion

in the law case and need no further discussion here. But some of these other grounds should be taken up briefly.

In the first place I can see no good reason why it should be contended that the bank's petition for priority of payment of its claim for money paid for taxes was filed too late. In my judgment that petition raised a question which could properly be taken up in the receivership suit at any time before distribution of the net assets of the company among its creditors. Indeed I do not believe that the contention to the contrary is taken very seriously either by the majority of the court or by the counsel for the receivers and the company.

Nor can I see any good reason for sustaining a contention that in order for the bank to be subrogated to the right of the city to file in the receivership suit a preferred claim for the taxes assessed by the city against the company and not paid by the company, such a claim must have been filed by the city as a preferred claim. An investigation of the matter has convinced me that such a contention is inconsistent with the doctrine of subrogation and, so far as I have been able to ascertain, is not supported by any authority. See *Equitable Trust Co.* v. *Kelsey*, 209 Mass. 416, cited in the opinion of the majority.

Nor can I see any merit in the contention that because some minor items were included in the original claim filed by the bank, besides items for taxes paid, for which priority of payment was claimed, the bank's right to such priority by subrogation should be denied.

Near the end of the opinion there is some reasoning which to my mind is neither clear nor convincing. It seems to be based partly on the proposition that if a person is having real estate sold, under proceedings in equity, for the satisfaction of two liens thereon, one of which is for a debt otherwise secured while the other is not, and the proceeds of the sale of the property is not sufficient to satisfy both liens, he must apply those proceeds first to the satisfaction

of the former debt. I know of no such rule; and what seems to me the correct rule which has been adopted in this state, and which is stated and discussed in the dissenting opinion in *Citizens Savings Bank* v. *Guaranty Loan Company,* above referred to, is to the contrary.

The reasoning above mentioned seems also to be based on the idea that the equitable doctrine of marshalling applies to the present proceeding; but I cannot see that that doctrine has any such application. On both these lines of reasoning see cases cited in the opinion of this court in *Willits* v. *Jencks Mfg. Co.,* which is cited in the opinion of the majority in the instant proceeding, and especially *First National Bank of Boston* v. *Proctor,* 40 F. (2d) 841.

Finally the majority of the court seem to rely strongly on certain language quoted from the opinion in the *Willits* case, from which they properly enough infer that the doctrine of subrogation should· not be applied where its application would be oppressive or inequitable.

But the court there found nothing oppressive or inequitable in the application of the doctrine in that case, though the considerations involved were, in my judgment substantially the same as in the instant case, and the claim based on the payment of city taxes was given priority over the claims of the general creditors of an insolvent corporation in receivership. Here we have not only the statutory right of priority for city taxes, but also the fact that all of the taxes after those for the year 1930 were expenses of the receivership and entitled to such priority for that reason.

The receivers, during the period when these taxes were assessed and for considerably more than a year afterwards, chose to hold on to the mortgaged property and kept the bank under an injunction against foreclosure of the mortgage, doubtless believing that the equity of redemption would prove to be a valuable asset of the receivership. Under these circumstances, I can see nothing oppressive or inequitable in sustaining the bank's contention that its

claim based on the payment of taxes is entitled to priority. In my judgment an opposite conclusion is contrary to the opinion of this court in the *Willits* case. Indeed, I believe this to be a stronger and clearer case for the application of the doctrine of subrogation than that case.

My conclusion is that the result reached by the trial justice was correct, though I do not agree with some of the grounds and some of the reasoning on which it was based by him, and that the decree appealed from should be substantially affirmed.